# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

GREGORY J. STOKES,

        Plaintiff,

vs.                         Case No. 8:08-cv-1657-T-23HTS[1]

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

        Defendant.

_____

## REPORT AND RECOMMENDATION[2]

### I.  Status

Gregory James Stokes is appealing the Social Security Administration's denial of his claims for Disability Insurance Benefits and Supplemental Security Income. His alleged inability to work is based on "limited use of [his] r[ight] side[,] problems with bowel and bladder[,] back pain and some loss of

---

      [1]     Pursuant to § 205(a)(5) of the E-Government Act of 2002, this Report and Recommendation is available electronically. It is not otherwise intended for publication or to serve as precedent.

      [2]     Specific, written objections may be filed in accordance with 28 U.S.C. § 636 and Rule 6.02, Local Rules, United States District Court, Middle District of Florida, within ten (10) days after service of this document. Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

feeling [in his] r[ight] hand and foot[.]" Transcript of Administrative Proceedings (Tr.) at 139 (capitalization omitted); *cf*. *id.* at 207 (disability report bearing date from February 2004, alleging "[a]rthritis, weak r[igh]t side (aft paralysis), bi-polar, neck and shoulder pain[,] arthritis in both knees and back and neck[,] torn tendon in left knee"). Mr. Stokes was found not disabled by Administrative Law Judge (ALJ) Tony L. Eberwein on January 17, 2004. *Id.* at 87, 98. The Appeals Council (AC) granted a request for review, vacated the ALJ's Decision, and remanded with specific instructions. *Id.* at 101-02. Upon remand, the judge again concluded Plaintiff was not disabled. *See id.* at 27, 39. The available administrative remedies have been exhausted and the case is properly before the Court.

On appeal, Plaintiff advances numerous arguments. *See* Memorandum of Law (Doc. #14; Memorandum). These will be addressed in turn.

## II.  Legal Standard

This Court reviews the Commissioner's final decision as to disability[3] pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

---

[3]    "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 1382c(a)(3)(A).  An ALJ must follow the five-step sequential inquiry described in 20 C.F.R. §§ 404.1520, 416.920, determining as appropriate whether the claimant 1) is currently employed; 2) has a severe impairment; 3) is disabled due

Whereas no special deference is accorded the application of legal principles, findings of fact "are conclusive if supported by substantial evidence[.]" *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (internal quotation marks omitted); *see also Abioro v. Astrue,* 296 F. App'x 866, 867 (11th Cir. 2008) (per curiam); *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (quoting *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)). Substantial evidence has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Falge*, 150 F.3d at 1322 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also Ingram*, 496 F.3d at 1260. Despite the existence of support in the record, the ALJ's determination may not be insulated from remand where there is a "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted[.]" *Ingram*, 496 F.3d at 1260 (internal quotation marks omitted); *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

---

to an impairment meeting or equaling one listed in the regulations; 4) can perform past work; and 5) retains the ability to perform any work in the national economy. *See also Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004).

## III.  Discussion

### A.  Effect of "Previous Agency Award"

As recounted by the judge, while Claimant's request for review by the AC "was pending, he also filed subsequent applications for Disability Insurance Benefits and Supplemental Security Income payments on February 6, 2004.  The claimant was subsequently found to be disabled, with an onset date of January 18, 2004[,]" the day after the first hearing Decision.  Tr. at 26.  Plaintiff now contends the ALJ "fail[ed] to follow [the] previous agency award[.]"  Memorandum at 2 (capitalization and emphasis omitted).

According to the Commissioner, Mr. Stokes is arguing "that because he was found to be disabled based on a subsequent application, the ALJ in this case should have found him to be disabled going back to December 6, 2001." Memorandum in Support of the Commissioner's Decision (Doc. #18; Opposition) at 4.  However, as pointed out by Defendant, *see id.*, and the ALJ, *see* Tr. at 26, the council's order of June 10, 2004, which was entered well beyond the date of Claimant's benefit award, remanded for a resolution of particular issues.  *See id.* at 101-02.  It neither found Mr. Stokes to be disabled in regard to the period covered by the judge's determination, nor did it direct the ALJ to so find.  "Rather, the AC instructed the ALJ to make a meaningful, independent review of

the evidence of record and to reach his own conclusions[.]"
Opposition at 5.

It has been noted "a later award of benefits does not legally
impact the review of a prior application for benefits[.]" *Telesha
v. Barnhart*, No. Civ.A.3:01-CV-2371, 2003 WL 22161584, at *9 n.7
(M.D. Penn. Mar. 31, 2003). Ordinarily, disputes as to the
consideration to be afforded a subsequent award arise in cases
where the evidence was not before the ALJ when his or her final
decision was made. Courts confronting the problem have varied in
their approach to determining whether the later award is material.
*See, e.g., Luna v. Astrue*, No. CIV 07-719-PHX-MHB, 2008 WL 2559400,
at *2 (D. Ariz. June 23, 2008) (importance of award depends upon
the degree of shared evidence underlying the conclusions but, even
absent knowledge by the Court of the similarity, finding of
disability one day after the ALJ's decision deemed material);
*Dickson v. Astrue*, No. 5:07CV00028 HLJ, 2008 WL 829206, at *1 (E.D.
Ark. Mar. 26, 2008) (applying general rule that "a different result
on a subsequent application for disability is not material to the
previous finding" despite determination of disability "as of . . .
the day after the ALJ's decision"); *Howard v. Astrue*, Civil Action
No. 07-144-GWU, 2008 WL 108776, at *1 (E.D. Ky. Jan. 9, 2008) (new
award "is not evidence of the plaintiff's condition on or before
the date of the ALJ's decision. While counsel . . .

suggests . . . that his client did not suddenly become disabled the day after the ALJ's decision, the fallacy in this argument is that the subsequent award of benefits says nothing about the plaintiff's condition during the *entire* period being considered under the plaintiff's current application.").  In any event, it is clear the mere fact of an award of benefits recognizing disability beginning one date does not compel a certain result for the preceding period,[4] and here the ALJ was able to consider whether the finding should influence his June 16, 2005, Decision.  Thus, to the extent Plaintiff argues otherwise, it is concluded remand on this ground is unnecessary.

### B.  Severe Impairment

Mr. Stokes takes issue with the list of severe impairments acknowledged by the ALJ.  *See* Memorandum at 2, 5.  Specifically, he contends "there is a non-recognition of all of [his] severe impairments."  *Id*. at 5.

"At the second step . . . medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities."  Social Security Ruling (SSR) 85-28.  The regulations provide:

> (b)  *Basic Work Activities*.  When we talk about
> basic work activities, we mean the abilities and

---

[4]     Similarly, determinations of credibility that may be embodied in a determination pertaining to one period, *cf.* Memorandum at 16, are not automatically binding as to other time frames.

aptitudes necessary to do most jobs.  Examples of these
include–
    (1)  Physical functions such as walking, standing,
sitting, lifting, pushing, pulling, reaching, carrying,
or handling;
    (2)  Capacities for seeing, hearing, and speaking;
    (3)  Understanding, carrying out, and remembering
simple instructions;
    (4)  Use of judgment;
    (5)  Responding appropriately to supervision, co- workers
and usual work situations; and
    (6)  Dealing with changes in a routine work setting.

20 C.F.R. §§ 404.1521(b), 416.921(b).

The step two burden of proof is a threshold inquiry described

as minimal. *See, e.g., Bridges v. Bowen,* 815 F.2d 622, 625 (11th

Cir. 1987) (per curiam); *Brady v. Heckler,* 724 F.2d 914, 920 (11th

Cir. 1984) (per curiam); *Giltner v. Astrue*, No. 06-131-B-W, 2007 WL

2021916, at *2 (D. Me. July 11, 2007) (report and recommendation of

magistrate judge), *adopted by Giltner v. Astrue*, Civil No. 06-131-

B-W, 2007 WL 2253426, at *1 (D. Me. July 31, 2007); *cf. Natale v.

Comm'r of Soc. Sec.*, No. 6:07-cv-18-Orl-31DAB, 2008 WL 227957, at

*4 (M.D. Fla. Jan. 25, 2008) (referring to "the light burden of

establishing severity at step two").  The claimant's burden at this

stage has been defined as follows: "'[A]n impairment can be

considered as not severe only if it is a slight abnormality which

has such a minimal effect on the individual that it would not be

expected to interfere with the individual's ability to work,

irrespective of age, education, or work experience.'" *Bridges,* 815

F.2d at 625 (quoting *Brady*, 724 F.2d at 920) (alteration in

original); *see also Ograbaja v. Comm'r of Soc. Sec.*, 186 F. App'x 848, 849 (11th Cir. 2006) (per curiam).

Mr. Stokes complains the judge failed to account for all of his severe impairments, "[m]ost notably, the ALJ did not state that he had a hemiparesis on the right side of his body along with a right claw deformity on his right hand, . . . and also the fact that he had a cervical herniated disc." Memorandum at 5. Yet, the ALJ found several severe impairments to be present. *See* Tr. at 34, 38 (recognizing as severe "remote history of C5 and C6 fractures (1978), with cord injury; partial fixed flexion deformity of the right upper extremity; cervical radiculopathy; osteophytes within the lumbar spine, with lumbar radiculopathy; . . . degenerative joint disease of the left knee, with a medial meniscal tear[;] depression/bipolar disorder, and a history of polysubstance abuse"). He then proceeded to step three of the sequential analysis.

At step two, an individual must merely "prove that she has a severe impairment or combination of impairments." *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). This "is all that is required at step two." *Council v. Comm'r of Soc. Sec.*, 127 F. App'x 473, No. 04-13128, slip op. at 4 (11th Cir. 2004) (Table) (per curiam); *see also Betsey v. Astrue*, No. 8:07-CV-1923-T-TGW, 2008 WL 5231839, at *2 (M.D. Fla. Dec. 15, 2008) (stating failure

"to consider the severity of all impairments at the second step . . . does not constitute reversible error since the law judge proceeded past the second step of the sequential analysis"); *Alvarez v. Astrue*, No. 3:07-cv-505-J-12TEM, 2008 WL 3992622, at *4 (M.D. Fla. Aug. 28, 2008) (quoting *Council*). Since the ALJ proceeded to step three of the sequential analysis, he will not be faulted for omitting or mischaracterizing conditions at the second step.

## C. Residual Functional Capacity (RFC)

Claimant alleges that certain of his conditions caused a greater level of limitation than found by the ALJ. *See* Memorandum at 2-4.

An individual's impairments, including any related symptoms, such as pain, "may [result in] physical and mental limitations that affect what [one] can do in a work setting." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). RFC is defined in the regulations as what an individual "can still do despite [his or her] limitations." *Id.* It can include descriptions of limitations apart from those observed in the diagnosis and treatment of a medical condition. *See id.* §§ 404.1545(a)(3), 416.945(a)(3). Thus, "observations of [a claimant's] limitations from [his or her] impairment(s) . . . provided by [the claimant, his or her] family, neighbors, friends, or other persons" will be considered. *Id.*

This assessment is not to be equated with the ultimate decision on disability, but is merely an interim evaluation considered along with other factors in making the disability decision. *See id.* §§ 404.1545(a)(5)(ii), 416.945(a)(5)(ii). An individual's limitations may be exertional, nonexertional, or both. *See id.* §§ 404.1569a(a), 416.969a(a).

The regulations provide that decisions regarding an individual's RFC are made solely by the Commissioner. *See id.* §§ 404.1546(c), 416.946(c). According to SSR 96-8p, "[i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"

Concerning his right hand, Mr. Stokes asserts he suffers from "[a] right claw deformity[,]" which "is far greater than a partial fixed flexion deformity" as identified by the judge. Memorandum at 3. He observes that "Dr. [David M.] McKalip, the treating neurosurgeon, [opined] on January 26, 2004, only nine days after the end of the relevant time period . . . , that [he] had an obvious right hemiparesis with poor hand intrinsic functions on the right with a right claw deformity." *Id.* at 2-3.

As for diagnostic labels, *see also, e.g, id.* at 11, the Court must point out it has been said a "mere diagnosis . . . says nothing about the severity of the condition." *Higgs v. Bowen*, 880

F.2d 860, 863 (6th Cir. 1988) (per curiam); *see also Scull v. Apfel*, 221 F.3d 1352, No. 99-7106, 2000 WL 1028250, at *1 (10th Cir. July 26, 2000) (Table) ("[D]isability determinations turn on the functional consequences, not the causes, of a claimant's condition[.]"); *Taylor v. Astrue*, No. 8:08-cv-550-T-TBM, 2009 WL 799445, at *4 (M.D. Fla. Mar. 24, 2009) ("[T]he mere diagnosis of a condition itself is alone not a basis for disability. . . . Plaintiff's claim turns not on the diagnosis but on whether the objective and clinical records of this condition dictated that the ALJ find a reduced residual functional capacity that left Plaintiff disabled from all work."). Still, the treating physician's assessment of poor functionality, *see* Tr. at 507, is of potential significance. Additionally, as described by Mr. Stokes, *see* Memorandum at 4, 12, the doctor reported "difficulty walking[,]" Tr. at 507, and right hand grip strength of 0/5. *See id.* at 525.

Unless rejected for good cause, a treating physician's opinion "is entitled to substantial weight[.]" *Ogranaja,* 186 F. App'x at 850 (quoting *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991)); *see also Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004). Further, the weight afforded a treating doctor's opinion must be specified along with "any reason for giving it no weight, and failure to do so is reversible error." *MacGregor v.*

*Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *see also Russell v. Astrue*, No. 08-16812, 2009 WL 1652403, at *3 (11th Cir. June 15, 2009) (per curiam) (same); *Phillips*, 357 F.3d at 1241 ("When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate [his or her] reasons.").

"The treating physician's report may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory." *Edwards*, 937 F.2d at 583; *see also Ogranaja*, 186 F. App'x at 850; *Phillips*, 357 F.3d at 1240-41. ALJs, however, may not simply substitute their own judgment for that of a medical expert. *See Wind v. Barnhart*, 133 F. App'x 684, 691 (11th Cir. 2005) (per curiam); *Graham v. Bowen*, 786 F.2d 1113, 1115 (11th Cir. 1986) (per curiam). It has sometimes even been stated that, "[w]here the [Commissioner] has ignored or failed properly to refute a treating physician's testimony, . . . as a matter of law . . . he has accepted it as true." *MacGregor*, 786 F.2d at 1053.

Unfortunately, Dr. McKalip's opinions cited by Plaintiff are not mentioned by the judge anywhere in the Decision. Moreover, the physician's views are seemingly in tension with the ALJ's RFC findings, for example the determination Claimant could "occasionally use his right upper extremity or operate hand controls." Tr. at 36, 38. The Commissioner argues that, putting

aside the finding "right hand motor strength was 0 out of 5 in March 2004[,]" the statement from January 26, 2004, "that Plaintiff had poor hand intrinsic functions on the right" is "not necessarily inconsistent with what the ALJ [said] about . . . RFC[.]" Opposition at 9. Even were this reasoning accepted, there does not appear to be any adequate basis for disregarding the grip strength finding in favor of the more general formulation indicating poor functionality.

Defendant implies both pieces of evidence (the grip strength finding and opinion as to poor hand functions), deriving from "'the last time [Claimant] had seen [Dr. McKalip] which would have been January 26, 2004,'" *id.* at 8 (quoting Memorandum at 4), are entirely irrelevant because they are based on an examination that post-dates, by approximately nine days, the period under review. *See id.* at 8-9. The situation is, at worst (from a claimant's perspective), analogous to that where evidence from beyond an individual's insured status is at issue. Such may be relevant and properly considered if it bears "upon the severity of the claimant's condition before the expiration of his or her insured status." *Basinger v. Heckler*, 725 F.2d 1166, 1169 (8th Cir. 1984); *see also Hunter v. Astrue*, No. 08-2209, 2009 WL 1040126, at *4 (10th Cir. Apr. 20, 2009); *Cooper v. Comm'r of Soc. Sec.*, 277 F.

Supp. 2d 748, 754 (E.D. Mich. 2003) ("Medical evidence that postdates the insured status date may be, and ought to be, considered, but only insofar as it bears on the claimant's condition prior to the expiration of insured status.").  For instance, the ALJ should consider evidence from a physician discussing the severity of an ongoing impairment or offering an opinion as to a claimant's condition prior to the date last insured.  *See Basinger*, 725 F.2d at 1169.  To be used for this purpose, the evidence ought to be "'reasonably proximate'" to the date last insured.  *Cooper*, 277 F. Supp. 2d at 754 (parenthetically quoting *Begley v. Mathews*, 544 F.2d 1345, 1354 (6th Cir. 1976)); *see also Tecza v. Astrue*, Civil Action No. 08-242 Erie, 2009 WL 1651536, at *9 (W.D. Penn. June 10, 2009).  Given the close temporal proximity to the period under consideration and the longstanding nature of Plaintiff's conditions, the ALJ should have at the very least explicitly discussed the documentation and explained what, if any, weight would be afforded to it.

**D.  Combination of Impairments**

Plaintiff contends his "impairments . . . should [have] be[en] considered in combination . . . in that any one impairment may not be disabling, but when considered in combination they have a disabling effect."  Memorandum at 5.

With regard to the combined effect of impairments, the Eleventh Circuit has stated:

> [A]n ALJ must make specific and well-articulated findings as to the effect of the combination of impairments when determining whether an individual is disabled.  We have reasoned that it is certain that mental and psychological defects can combine with physical impairments to create total disability to perform gainful employment.  In *Bowen v. Heckler*, [748 F.2d 629 (11th Cir. 1984),] this court also cited with approval the reasoning of other courts that a disability claimant should be evaluated as a whole person, and not evaluated in the abstract as having several hypothetical and isolated illnesses.

*Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993) (internal quotation marks and citations omitted); *see also Natale*, 2008 WL 227957, at *4; *Callahan v. Barnhart*, 186 F. Supp. 2d 1219, 1226-27 (M.D. Fla. 2002).  The requirement to consider the combined effects of a claimant's impairments entails two distinct duties.  First, the ALJ must consider all impairments and omit none.  *See Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987) (per curiam); *Engebretson v. Astrue*, No. 407CV047, 2008 WL 4845298, at *3 (S.D. Ga. Nov. 6, 2008).  Second, the judge must consider the combined effect of the claimant's various impairments, even those the ALJ finds to be not severe, on his or her ability to work.  *See Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990) (per curiam); *see also* 20 C.F.R. §§ 404.1545(e), 416.945(e); *Engebretson*, 2008 WL 4845298, at *3; *Bruet v. Barnhart*, 313 F. Supp. 2d 1338, 1344 (M.D. Fla. 2004).  *But cf. Osborn v. Barnhart*, 194 F. App'x 654, 664

(11th Cir. 2006) (per curiam) (determining that, "[t]o the extent [it is argued] that the ALJ erred by failing to include the effect of Osborn's 'combination of impairments,' it was not error for the ALJ to disregard Osborn's depression because it was not severe within the meaning of the regulations").

At the third step of the sequential inquiry, the judge demonstrated his awareness of the need to evaluate Claimant as a whole person when he determined none of his "impairments, or combination of impairments," met or equaled a Listing. Tr. at 34. Thus, it is not immediately apparent that the ALJ failed to meet his obligation. *Cf., e.g., Riden v. Astrue*, No. 3:07-CV-134(CDL), 2008 WL 5255825, at *5 (M.D. Ga. Dec. 15, 2008) ("The Eleventh Circuit has held that an ALJ's statement that he considered the combined effects of the Claimant's impairments was enough to prove that he did, in fact, do so.").

**E.   Global Assessment of Functioning (GAF) Scores**

Claimant next makes several arguments involving GAF scores assigned to him "between July of 2002 and January of 2004[.]" Memorandum at 7.

> The GAF
>
> scale "is used to report the clinician's judgment of the individual's *overall* level of functioning." *Hudson ex rel. Jones v. Barnhart*, 345 F.3d 661, 662 n.2 (8th Cir. 2003) (emphasis added) (internal quotation marks omitted); *see also Quaite v. Barnhart*, 312 F. Supp. 2d

1195, 1200 (E.D. Mo. 2004). As merely "a global
reference scale [intended] to aid in . . . treatment[,]"
*Jiles v. Barnhart*, No. Civ.A. 05-G-0861-S, 2006 WL
4402937, at *2 n.1 (N.D. Ala. Sept. 11, 2006), a GAF
score does not itself necessarily reveal a particular
type of limitation and "is not an assessment of a
claimant's ability to work[.]" *Id.* (also noting the
Commissioner's acknowledgment "that GAF scores do not
have a 'direct correlation to the severity requirements
in [the] mental disorders listings'" (quoting 65 Fed.
Reg. 50,764-65 (Aug. 21, 2000)); *see also Quaite*, 312 F.
Supp. 2d at 1200 (unless doctor assigns GAF number
"because he perceived an impairment in plaintiff's
ability to work, the score, standing alone, does not
establish an impairment seriously interfering with
plaintiff's ability to perform basic work activities").
Thus, an opinion concerning GAF, even if required to be
accepted as valid, would not translate into a specific
finding in regard to functional limitations.

*Ward v. Astrue*, No. 3:00-CV-1137-J-HTS, 2008 WL 1994978, at *3
(M.D. Fla. May 8, 2008); *see also Wallace v. Astrue*, Civil Action
No. 2:07cv850-WC, 2008 WL 2428926, at *4 (M.D. Ala. June 12, 2008).

One of the reports brought to the Court's attention
(reflecting a GAF score of 48), "found at page 585 and . . . given
to the Appeals Council[,]" purportedly "could not be found at the
hearing or immediately thereafter." Memorandum at 8. Plaintiff
maintains this page "should have been reviewed by the Appeals
Council and addressed by them." *Id.* at 9. He claims it
constitutes new, non-cumulative, material evidence, and that
"[t]here was good cause . . . for why this evidence had not been
presented to the [ALJ] in that it could not be found or located."
*Id.*

- 17 -

Upon the submission of

> new noncumulative and material evidence to the AC after
> the ALJ's decision, the AC shall consider such evidence,
> but only where it relates to the period on or before the
> date of the ALJ's hearing decision. Material evidence is
> evidence that is relevant and probative so that there is
> a reasonable possibility that it would change the
> administrative result. When evidence is submitted for
> the first time to the AC, that new evidence becomes part
> of the administrative record. The AC considers the
> entire record, including the new, material, and
> chronologically relevant evidence, and will review the
> ALJ's decision if the ALJ's action, findings, or
> conclusion is contrary to the weight of the evidence
> currently of record.

*Smith v. Soc. Sec. Admin.*, 272 F. App'x 789, 800-01 (11th Cir. 2008) (per curiam) (internal quotation marks and citations omitted). If it "denies review after consideration of new evidence, a court should determine whether [20 C.F.R.] § 404.970(b) or § 416.1470(b) has been violated by the denial of review because the law judge's decision is contrary to the weight of the evidence of record, including the new evidence." *Tucker v. Astrue*, No. 8:07-CV-621-T-TGW, 2008 WL 2811170, at *7 (M.D. Fla. July 21, 2008). Upon finding such a violation, the appropriate course "is to remand the matter to the Commissioner so that the administrative review that was improperly denied is undertaken." *Id.*[5]

---

[5] "'Section 405(g) permits a district court to remand an application for benefits to the Commissioner . . . by two methods, which are commonly denominated "sentence four remands" and "sentence six remands . . . ."'" *Barclay v. Comm'r of Soc. Sec. Admin.*, 274 F. App'x 738, 743 (11th Cir. 2008) (per curiam) (quoting *Ingram*, 496 F.3d at 1261) (alterations in *Barclay*). "[W]hen 'evidence properly presented to the Appeals Council has been considered by the Commissioner and is part of the administrative record[,]'" a sentence four remand

On April 21, 2008, Plaintiff submitted to the AC a memorandum and attached a two-page Psychiatric Evaluation/Mental Status Examination (Evaluation), of which the second page appears in the transcript at page 585. *Cf.* Tr. at 5 (AC Exhibits List noting "Memorandum from the claimant's representative dated April 21, 2008 with attached duplicate medical record dated January 5, 2004"), 6, 9. The Evaluation appears in the record that was before the ALJ, *see id.* at 485-86, with the exception that copy bore a single signature, whereas the copy at issue was, according to Plaintiff, "countersigned by Dr. Lefler[.]" Memorandum at 8.

After receiving the Evaluation containing the additional signature, the AC stated it "considered the reasons [Claimant] disagree[d] with the decision and the additional evidence listed on the enclosed Order of Appeals Council[,]" but ultimately "found no reason . . . to review the [ALJ]'s decision. Therefore, [it] denied [the] request for review." Tr. at 6. Accordingly, "it did not err by failing to consider the new evidence." *Smith*, 272 F. App'x at 801; *see also Barclay v. Comm'r of Soc. Sec. Admin.*, 274 F. App'x 738, 743 (11th Cir. 2008) (per curiam). However, because the AC declined to review the decision, it can be inferred the council held the view that the ALJ's decision was not contrary to

is the proper remedy. *Id.* at 744 (quoting *Ingram*, 496 F.3d at 1269).

the weight of the evidence in the record, including the Evaluation. *Cf. Couch v. Astrue*, 267 F. App'x 853, 857 (11th Cir. 2008) (per curiam); *Levy v. Astrue*, No. 07-80157-CIV, 2008 WL 4753518, at *24 (S.D. Fla. Oct. 28, 2008).

Ultimately, Mr. Stokes has advanced the Evaluation in support of his argument the ALJ should have relied upon "the opinions of the nurse practitioners" as expressed in the GAF score, Memorandum at 8, which, Claimant believes, is "a determination on the ability to function." *Id.* at 7. However, as already alluded to by the Court, GAF scores are of very limited usefulness due to their failure to translate into concrete functional limitations. Hence, the additional evidence should not be deemed material.

One final contention relating to GAF scores is put forward. Plaintiff complains the ALJ misinterpreted the opinion of a testifying medical expert, "stat[ing] that an individual with a GAF of 50 can perform simple work." *Id.* at 9. "What Dr. [Michael] Eastridge said[,]" it is explained, "was that he felt Mr. Stokes from a psychological standpoint and that alone, could perform simple work." *Id.* Thus, he was not expressing a viewpoint accounting for physical problems, and "the assertion by the ALJ that Dr. Eastridge had said that an individual with a score of 50 . . . on the GAF would be able to perform simple work is simply not

accurate." *Id.* at 10. The Commissioner insists "Plaintiff's focus is misdirected. The more significant statement from Dr. Eastridge was his opinion that from a psychological standpoint Plaintiff himself was capable of performing simple work[.]" Opposition at 14.

The ALJ outlined several caveats concerning the use of GAF scores. He noted "Dr. Eastridge indicated that GAF scores are entirely subjective and only represent an examiner's impression of the person's ability to function, not their ability to do future work." Tr. at 33. Further, "[t]he doctor . . . stated that for GAF scores to provide any benefit, there must not only be an immediate impression of an individual's condition, but also a 'last year' impression to provide a longitudinal record of a person's mental status." *Id.* At the hearing, the judge even remarked he has "a lot of problems with GAF's to start with," *id.* at 610, apparently referring to their limited value in the context of disability determinations.[6] "Regardless," wrote the ALJ in his Decision, "Dr. Eastridge indicated that an individual with a GAF score of 50 should still be capable of simple work activities." *Id.* at 33.

---

[6] Even Dr. Eastridge seemed to suggest such scores were of limited value. *See id.* at 611 (stating "[i]t's relatively subjective and typically can be unreliable for an observer to observe, and that's why I don't rely on it very much").

Dr. Eastridge testified that "based just on the mental [aspect of overall functioning, he] would think that [Claimant] could do some work." *Id.* at 612. This is indeed not quite what the judge attempted to paraphrase. Given his highly prudent level of caution when addressing GAF scores, it does not appear likely the ALJ placed any significant weight on the alleged opinion of the expert as to Plaintiff's ability to perform simple work activities. Still, as it is being recommended this case be remanded on other grounds, he should revisit Dr. Eastridge's statement.[7]

## F.  Hypothetical

Mr. Stokes claims the hypothetical propounded to the vocational expert (VE) was marred by a number of deficiencies. *See* Memorandum at 11-13.

For VE testimony to provide substantial evidence of a claimant's ability to work, the hypothetical question eliciting that testimony must have described adequately all significant impairments and other occupational factors. *See Phillips*, 357 F.3d at 1240 n.7 (question must include all impairments); *Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (per curiam) (VE testimony needs to relate to person with claimant's education,

---

[7]     And to the extent the judge afforded less weight to evidence from the Suncoast Center for Community Mental Health, Inc., because the sources were deemed "non-acceptable medical sources[,]" *id.* at 36, he should consider whether the presence of a countersignature, *see id.* at 585, alters his position.

skills, experience, and limitations); *Ford v. Astrue*, No. 3:07-cv-835-J-TEM, 2009 WL 789895, at *9 (M.D. Fla. Mar. 23, 2009) ("It is well established in the Eleventh Circuit that when a vocational expert is utilized at the fifth step in the sequential evaluation process, the hypothetical questions posed must include all impairments of the particular claimant/plaintiff."). The necessity of comprehensiveness does not, of course, extend to limitations properly rejected by the ALJ. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (per curiam).

In specifying the claimant's impairments, the judge is not required to use diagnostic terms or refer to the medical conditions themselves. *See England v. Astrue*, 490 F.3d 1017, 1023 (8th Cir. 2007); *Cooper v. Comm'r of Soc. Sec.*, 217 F. App'x 450, 453 (6th Cir. 2007) (per curiam); *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). Rather, the individual's functional limitations are to be conveyed to the expert. *See England*, 490 F.3d at 1023; *Cooper*, 217 F. App'x at 453; *Webb*, 368 F.3d at 633.

Plaintiff argues the hypothetical "which forms the basis for the ALJ decision . . . only describes the ability to do simple work." Memorandum at 11. The judge purportedly "does not define what he means by" simple work and should have used the "additional adjectives of routine, repetitive work[.]" *Id.* Defendant points

out that, "[i]n response to the question, the VE identified [certain] unskilled jobs[,]" and he observes "'[u]nskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.'" Opposition at 14 (quoting 20 C.F.R. §§ 404.1568(a), 416.968(a)). Therefore, "[t]he jobs identified by the VE coincided with Plaintiff's RFC to do simple, routine, repetitive tasks[.]" *Id.* at 14-15.

In his RFC assessment, the ALJ indeed found "the claimant was limited to simple, routine, repetitive tasks." Tr. at 36, 38. His hypothetical question described an individual "limited to doing only simple work[,]" *id.* at 613, without specific mention of whether the work needed to be routine or repetitive. The judge thereafter relied on information furnished by the VE as to three jobs, all unskilled, and determined these "represent a significant number of jobs in the national economy that the claimant remains able to perform." *Id.* at 37. Hence, unless the unskilled jobs are necessarily limited to the performance of *routine*, *repetitive* tasks (a matter not obviously resolved by the regulations cited by Defendant), the hypothetical might be materially flawed.

Authority on this topic is rather sparse. In *Byrd v. Astrue*, No. C08-1248-RSL, 2009 WL 1351206, at *9 (W.D. Wash. May 13, 2009), the plaintiff, observing "that unskilled work is defined in terms

of simple duties[,]" urged "a restriction to repetitive work" is a distinct limitation, reducing the range of unskilled jobs available to the person so constrained. *See Byrd*, 2009 WL 1351206, at *11 ("She asserts that . . . the ALJ had no way of knowing how many unskilled repetitive light jobs remained after excluding non-repetitive unskilled light jobs."). The court seems to have accepted the proposition a limitation to repetitive work would at least to some degree reduce "the occupational base for unskilled light work[.]" *Id.* It is proper, then, to suppose the particular jobs utilized by the ALJ are potentially excludable by virtue of the descriptors omitted from the hypothetical.

Had the judge specified a need for routine, repetitive tasks, and if it is assumed the VE would have testified consistently with the Dictionary of Occupational Titles (DOT), the focus shifts to whether the reasoning level indicated by the DOT for the jobs identified is consistent with Plaintiff's deficiencies. Some "courts have found" a limitation "to only simple, routine or repetitive work . . . consistent with reasoning at level two rather than at reasoning level one[, whereas other] courts take the position that reasoning level one is more appropriate." *Harrington v. Comm'r of Soc. Sec. Admin.*, Civil No. 07cv1330 JM (RBB), 2008 WL 4492614, at *10 (S.D. Cal. Sept. 29, 2008). Here, just one of the

jobs relied upon, that of "Produce Inspector (DOT § 529.687-186),"
Tr. at 37 (emphasis omitted); *see id.* at 614, is given a reasoning
level of one.[8]   "Arcade Attendant (DOT § 342.667-014)," *id.* at 37
(emphasis omitted); *see id.* at 614, requires reasoning at level
two.  The third job, "Survey Worker (DOT § 205.367-[0]54)," *id.* at
37 (emphasis omitted); *see id.* at 614, is yet more mentally
challenging, with reasoning at level three demanded.  On remand,
the ALJ should be instructed to propound a hypothetical reflective
of all Plaintiff's limitations.

Mr. Stokes also implies it was incumbent upon the judge to
include in the hypothetical a need "to lie down" and a capacity for
working less than "eight hours a day[.]"  Memorandum at 12.

---

[8]    It is not, of course, a foregone conclusion the VE would have agreed
with the DOT on this point.  Still, even if no reversible error infects the
judge's use of a subset of the jobs identified, his or her finding a significant
number exist that claimant can perform is undermined where there is error as to
others.  At the final step of the process, "the burden is on the Commissioner to
show that other work exists in significant numbers in the national economy that
the claimant is able to perform." *Pettus v. Astrue*, 226 F. App'x 946, 948 (11th
Cir. 2007) (per curiam) (citing *Jones*, 190 F.3d at 1228).  Because "[t]here is
no precise boundary between a significant and an insignificant number of jobs for
the purpose of determining whether a claimant can perform work existing in the
national economy[,]" this decision "should ultimately be left to an
administrative law judge's common sense as applied to a particular claimant's
factual situation in light of the controlling statutory language." 3 Soc. Sec.
Law & Practice § 43:137.  Ordinarily, "it is inappropriate for the federal courts
to determine in the first instance whether a particular number of jobs is a
significant number." *Segovia v. Astrue*, 226 F. App'x 801, 804 (10th Cir. 2007);
*cf. Sanchez v. Barnhart*, 388 F. Supp. 2d 405, 411 (D. Del. 2005) ("[T]he A.L.J.
must find that there are other jobs existing in significant numbers in the
national economy[.]").  In this vein, the Court also recognizes the VE opined two
of the jobs identified, but not all three, "can be performed by a one-handed
individual[.]"  Tr. at 618.

However, the ALJ's RFC finding did not include such restrictions. *See* Tr. at 36, 38. Neither has Plaintiff established them.

Another contention advanced is "the sit/stand option as given by the ALJ in his hypothet . . . is only reserved for people who are in professional or management positions, in that only those people would be able to change their position at will." Memorandum at 12. According to Claimant, "[t]he jobs testified to by the VE . . . were unskilled jobs and as a consequence, normally such individual[s] cannot perform the prolonged standing or walking required for the performance of light work since they would not be able to change their position at will." *Id.* Essentially, Mr. Stokes is directly disagreeing with the substance of the VE's testimony. While his line of reasoning is perhaps resourceful, he cites no authority and fails to show the individual jobs identified require prolonged walking or standing that would conflict with a sit/stand option.

Dovetailing into the previous argument is Plaintiff's assertion he "could not perform the prolonged standing or walking required for the performance of light work as stated in SSRs 83-10 and 83-12 and, therefore, he could not perform the jobs testified to by the VE or any other light unskilled work." *Id.* at 13. "Light work involves lifting no more than 20 pounds at a time with

frequent lifting or carrying of objects weighing up to 10 pounds."
20 C.F.R. §§ 404.1567(b), 416.967(b).   The regulations further
explain that, "[e]ven though the weight lifted may be very little,
a job is in this category when it requires a good deal of walking
or standing, or when it involves sitting most of the time with some
pushing and pulling of arm or leg controls." *Id.* Moreover, "[t]o
be considered capable of performing a full or wide range of light
work, [a claimant] must have the ability to do substantially all of
these activities." *Id.* SSR 83-10 specifies "the full range of
light work requires standing or walking, off and on, for a total of
approximately 6 hours of an 8-hour workday."   Clearly, the
definition of light work is somewhat more complex than Claimant
presumes, and not every job classified in that category must
involve prolonged standing and walking.[9]  Consequently, no error
has been elucidated on this point.

### G.   Pain Standard/Credibility

Plaintiff maintains the ALJ erred in not determining the pain
standard was met in his case.  *See* Memorandum at 13-16.   He also
raises various other credibility-related concerns.  *See id.* at 14-
16.

---

[9]    Likewise unpersuasive is Mr. Stokes's protest that "no foundation"
was "provided by the ALJ in his question to the VE as to how individuals such as
[he], who can only sit for one-half hour or stand for one-half hour, [are] going
to be able to perform [the] prolonged standing or walking required for the
performance of light work[.]"   Memorandum at 12.

The regulations recognize "[p]ain or other symptoms may cause a limitation of function beyond that which can be determined on the basis of the anatomical, physiological or psychological abnormalities considered alone[.]" 20 C.F.R. §§ 404.1545(e), 416.945(e); *see also Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (per curiam). The standard in the Eleventh Circuit for evaluating the Commissioner's treatment of pain testimony has been articulated as follows:

> The [Commissioner] must consider a claimant's subjective testimony of pain if she finds evidence of an underlying medical condition, and either (1) objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (2) that the objectively determined medical condition is of a severity that can reasonably be expected to give rise to the alleged pain.

*Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (per curiam); *see also Russell*, 2009 WL 1652403, at *4; *Eckert v. Comm'r of Soc. Sec.*, 152 F. App'x 784, 790 (11th Cir. 2005) (per curiam); SSR 96-7p (outlining how subjective complaints are to be evaluated). "A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Foote*, 67 F.3d at 1561; *see also Russell*, 2009 WL 1652403, at *4.

After discussing aspects of Plaintiff's testimony, the ALJ found "that the claimant's subjective complaints, as well as the reports of all third-party witnesses, are not consistent with the

objective medical evidence, and other evidence." Tr. at 35-36. Although the judge did "not believe that the claimant is entirely symptom free," he thought Mr. Stokes had "failed to show not only that the severity of his pain is confirmed by objective medical evidence, but also that . . . the objectively determined medical condition(s) is of such a severity that it can be reasonably expected to give rise to his alleged pain." *Id.* at 36.

In addition to the "MRI evidence of disc herniation in the neck[,]" Memorandum at 14; *cf.* Tr. at 472 (finding of "a moderate-sized left posterolateral and central disc herniation . . . with moderate ventral effacement of the thecal sac and some indentation on the ventral surface of the spinal cord"), and "EMG and NCS studies showing radiculopathy in both the neck and the low back[,]" Memorandum at 14; *cf.* Tr. at 437, 496, there are the opinions "of the treating neurosurgeon, Dr. McKalip," Memorandum at 14, which, as discussed *supra*, the judge neglected to address. On remand, he should be directed to reevaluate the collective impact of the evidence to ascertain whether the pain standard has been met. In a related vein, he ought to articulate explicitly what inconsistency he perceives in "the reports of all third-party witnesses," Tr. at 36, if they are again to be rejected. *Cf.* Memorandum at 14-15 ("There are no specific analyses of the

statements of the third party witnesses and why their testimony would be inconsistent.").[10]

The judge discredited Mr. Stokes in part by charging there were "varying complaints of pain from one hearing to another. For example, at the latest hearing on April 21, 2005, the claimant mentioned he was unable to work due to right upper extremity weakness. Interestingly, however, the claimant failed to mention such a limitation at the other hearing." Tr. at 35. Plaintiff contends that since the problem described in the second hearing exists "and was confirmed by Dr. McKalip and even the consultative exam of Dr. [Sidney] Grau[, the ALJ's] assertion . . . makes no sense." Memorandum at 15. Indeed, the ALJ himself accepted the existence of right upper extremity limitations. *See* Tr. at 36, 38. It may be a subject of curiosity if testimony about this precise problem did not arise at the first hearing. Still, unless Claimant's credibility is being impugned for an attempt, at the earlier hearing, to appear *less* disabled than he actually was, this matter bears revisiting by the judge.

"Finally," writes Plaintiff, "there is a false issue of alcohol behavior." Memorandum at 15. "The ALJ finds that such

_____

[10]     Without citation, Plaintiff also states "the ALJ in this case required surgery as for a showing of how bad the pain would be." *Id.* at 16.  The Court's perusal of the Decision did not readily disclose the imposal of any such requirement.

issue of alcohol is not material and there is absolutely no *medical* evidence in the record between December 6, 2001 through January 17, 2004, when there is any showing of drinking in excess." *Id.* (emphasis added). The Commissioner answers this allegation by maintaining the "*non-medical* evidence indicated that Plaintiff continued to consume alcohol which would be expected to make his physical and mental health condition worse[.]" Opposition at 16-17.

The judge, too, spoke of alcohol use in terms of non-medical evidence. *See* Tr. at 35. At the hearing, Claimant testified to drinking "one or two beers" on a weekend while watching sports, "not during the week." *Id.* at 607; *cf.* Opposition at 17 (citing, in relation to alcohol usage, only the hearing testimony). At such a modest rate of consumption, the ALJ's declaration money was being expended on alcohol "that could have been spent for treatment[,]" Tr. at 35, presents a bit of a stretch and highlights the need for this case to be remanded for a thorough reconsideration of credibility.

## H. Bias

Lastly, it is urged the ALJ was biased and "this case at a minimum should be remanded and reversed for a proper hearing before a different" judge. Memorandum at 18.

"The Social Security Act requires that a claimant's hearing be both full and fair." *Fries v. Comm'r of Soc. Sec. Admin.*, 196 F. App'x 827, 830 (11th Cir. 2006) (per curiam) (citing *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam)). The "'cold neutrality of an impartial judge'" is essential if due process is to be satisfied. *Pastrana v. Chater*, 917 F. Supp. 103, 105 (D.P.R. 1996) (quoting *United States v. Orbiz*, 366 F. Supp. 628, 629 (D.P.R. 1973)). Essentially, an "ALJ's role in a disability benefits hearing is analogous to that of a trial judge, for whom it is clearly improper to interfere with the questioning of a witness, particularly when it is done in a partisan manner." *Fulwood v. Heckler*, 594 F. Supp. 540, 547 (D.D.C. 1984). Moreover, a disability hearing is not adversarial and the administrative law judge has a duty to help develop the facts. *Cf. Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997) (per curiam). If a judge appears biased towards a claimant, the proper remedy is reconsideration of the claim before a different ALJ. *See Miles*, 84 F.3d at 1401 (citing 20 C.F.R. § 404.940).

Still, "ALJs . . . are presumed to be unbiased." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999) (citing *Schweiker v. McClure*, 456 U.S. 188, 195 (1982)). Thus, the burden of demonstrating bias rests with the party asserting it. *See id.*

Further, remarks by a judge "'that are critical or disapproving of, or even hostile to counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge' unless 'they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.'" *Brown v. Apfel*, 192 F.3d 492, 500 (5th Cir. 1999) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)).

To ensure that a claimant receives a fair hearing, the Social Security administration has provided the following:

> An [ALJ] shall not conduct a hearing if he or she is prejudiced or partial with respect to any party or has any interest in the matter pending for decision. If you object to the [ALJ] who will conduct the hearing, you must notify the [ALJ] at your earliest opportunity. The [ALJ] shall consider your objections and shall decide whether to proceed with the hearing or withdraw. If he or she withdraws, the Associate Commissioner for Hearings and Appeals, or his or her delegate, will appoint another [ALJ] to conduct the hearing. If the [ALJ] does not withdraw, you may, after the hearing, present your objections to the Appeals Council as reasons why the hearing decision should be revised or a new hearing held before another [ALJ].

20 C.F.R. §§ 404.940, 416.1440. A claim of bias is waived if the claimant is aware of the facts giving rise to his bias claim, but fails to raise it in accordance with 20 C.F.R. §§ 404.940, 416.1440. *See Hummel v. Heckler*, 736 F.2d 91, 94 (3d Cir. 1984).

Despite having been expounded in a memorandum sent to the AC in April 2008, *see* Tr. at 581-83, Plaintiff has failed to demonstrate he raised the bias issue at the earliest opportunity,

as required by the regulations. The alleged bias relates to statements and conduct by the ALJ "at the second hearing[.]" Memorandum at 16; *see also id.* at 17-18. "[T]herefore[,] the earliest opportunity for Plaintiff to object would have been during that hearing." *Scheffler v. Comm'r of Soc. Sec.*, No. 07-CV-11411, 2008 WL 1808315, at *5 (E.D. Mich. Apr. 21, 2008); *see also Klinger v. Barnhart*, No. CIV.A. 02-1008, 2003 WL 21654994, at *2 (E.D. Pa. July 15, 2003) (counsel required "to interrupt the ALJ, object to the conduct, and ask the ALJ to recuse herself"). Since a review of the hearing transcript discloses a failure to object in the requisite manner, "the Court is precluded from reviewing the issue of the ALJ's bias." *Scheffler*, 2008 WL 1808315, at *5. The request for a hearing before a different ALJ should, for this reason, be denied. Of course, the Commissioner would remain free to assign the matter to a different ALJ on remand, if appropriate, in response to a request from Plaintiff or otherwise. *Cf. Harville v. Astrue*, No. CIV S-08-171 KJM, 2009 WL 800226, at *3 (E.D. Cal. Mar. 25, 2009).

## IV. Recommendation

In accordance with the foregoing, it is recommended the Court enter a judgment pursuant to sentence four of 42 U.S.C. § 405(g), and as incorporated by 42 U.S.C. § 1383(c)(3), **REVERSING** the

Commissioner's decision and remanding with instructions to 1) discuss the opinions of Dr. McKalip, explaining the weight afforded thereto; 2) properly characterize and weigh Dr. Eastridge's statement regarding Plaintiff's ability to perform simple work activities; 3) propound a hypothetical question to a vocational expert that is reflective of all impairments, including need for simple, routine, repetitive work; 4) thoroughly reconsider Claimant's credibility; 5) examine the collective impact of the evidence to ascertain whether the pain standard has been met; 6) reevaluate the significance, if any, of alcohol use; 7) articulate the inconsistency perceived in the third-party witness reports, if they are again to be rejected; 8) consider whether the presence of a countersignature affects the weight that should be afforded evidence from the Suncoast Center for Community Mental Health, Inc.; and 9) conduct any further proceedings deemed proper. If benefits are ultimately awarded, it is also recommended Plaintiff's counsel be given thirty (30) days from receiving notice of the

amount of past-due benefits to seek the Court's approval of attorney's fees under the Social Security Act.

**DONE AND ENTERED** at Jacksonville, Florida, this 2nd day of July, 2009.

/s/      Howard T. Snyder
HOWARD T. SNYDER
UNITED STATES MAGISTRATE JUDGE


Copies to:

The Honorable Steven D. Merryday
United States District Court Judge

Counsel of record
    and pro se parties, if any